**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDREW J. MAYO, | : |
| Plaintiff, | : |
| - against - | : |
| FEDERAL GOVERNMENT, et al., | : |
| Defendants. | : |

**OPINION AND ORDER**

**11 Civ. 2828 (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.    INTRODUCTION

Plaintiff Andrew J. Mayo ("Mayo") brings this action against the Federal Government, Dr. Ira Jasser, Manhattan Veteran Affairs Hospital ("Manhattan VA"), Bronx Veteran Affairs Hospital ("Bronx VA"), and Janssen Pharmaceuticals, Inc. ("Janssen") for medical malpractice, products liability based on failure to warn and design defect, and for violating his constitutional right to privacy, presumably under the Fifth Amendment. Mayo was prescribed risperidone, or Risperdal, an anti-psychotic medication, while under Dr. Jasser's care at the Manhattan VA. He claims that the prescribed Risperdal caused him to suffer extreme weight gain, high blood pressure, and elevated blood sugar levels. In addition, he claims that his doctor participated in a government conspiracy to conduct medical testing on veteran patients. Before the Court are Defendant United States Government's motions to dismiss pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rule of Civil Procedure, Defendant Dr. Ira Jasser's motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(1), and Defendant Janssen's motion for judgment on the pleadings pursuant to Rule 12(c).

For the reasons stated below, Defendants Janssen and United States Government's motions are **GRANTED**. Defendant Jasser's motion is **GRANTED** with respect to the

constitutional claim.  Although Jasser's motion is **DENIED** with respect to the malpractice claim, the claim should be **DISMISSED** without prejudice because no federal claims remain.

## II.   BACKGROUND

Mayo served in the United States Navy from 1984 to 1987 and was honorably discharged.  Am. Compl. 46.  He was determined to be disabled due to his bipolar disorder and hypothyroid condition.  The Veterans Affairs Administration determined that the bipolar disorder was a one hundred percent disability, while the excessive weight gain, potentially due to a thyroid condition, was a thirty percent disability.  *Id.* at 46-47.  Mayo claims to have been under the care of Dr. Jasser from 1987 to 2009 for the treatment of his bipolar condition.  Pl. Resp. to Mot. to Dismiss ("Resp.") 1.  He began taking Risperdal in 2000 and continued with the medication for one year until 2001, under Dr. Jasser's supervision.  *Id.*  Mayo states that the medication was discontinued when he developed Type II diabetes and had excessive weight gain of 75 to 100 pounds over his average weight.  He alleges that he was never warned of the potential side effects, and as a result of taking Risperdal and the weight gain, he subsequently had a series of medical illnesses, including cardiac attacks, high blood pressure, liver problems, and diabetic concerns.  *Id.* at 3, 5; 40.  Mayo states that Dr. Jasser failed to warn of the effects because he was colluding with the pharmaceutical manufacturers of Risperdal – Johnson and Johnson and its subsidiary, Janssen Pharmaceuticals Inc. – to test the drug on veterans.  Resp. 6.  Previously, Mayo submitted an administrative claim with Veteran Affairs in 2006, which was denied.

Janssen filed a Rule 12(c) motion for judgment on the pleadings, arguing that Mayo's claims violate the statute of limitations and lack the factual specificity required for a cognizable failure to warn products liability claim.  Jasser and the United States Government filed a motion

to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction on the grounds that Mayo failed to exhaust administrative remedies and pursuant to Rule 12(b)(6) for failure to state a claim.

## III.   DISCUSSION

### A.   Statute of Limitations

Janssen, improperly sued as Johnson and Johnson, argues that the statute of limitations on Mayo's tort claim has expired under the New York Civil Practice Law and Rules ("C.P.L.R") §§ 214(5) and 214-c (2).  Mot. for J. on the Pleadings 4.  Similarly, the Government asserts that Mayo's claim has expired under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346.

Under C.P.L.R. § 214(5), a defendant must bring an action to recover for injury within three years from the date when the injury first occurred. *Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429 (1993). Under § 214-c(2), the injury accrues either when the injury occurs or when a reasonable person would have discovered the injury, that is, when the party first becomes aware of the primary condition. *Matter of New York Cnty DES Litigation*, 89 N.Y.2d 506 (1997). Similarly, the FTCA requires an injured plaintiff to bring an action (1) within two years of accrual, (2) when the plaintiff discovered his injury, or (3) when the plaintiff should have discovered his injury. *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 988 (4th Cir. 1987). Dr. Jasser's declaration, along with medical records, indicate that Mayo decided to stop taking Risperdal in 2002 because of his excessive weight gain. Decl. of Dr. Ira Jasser ("Jasser Decl.") 1 (January 3, 2012). Accordingly, Mayo's purported injury – massive weight gain and diabetes – was likely discovered by 2002, and the statute of limitations under New York law would have expired in 2005 under C.P.L.R. §§ 214(5) and 214-c(2), and in 2004 under the FTCA.

1.    **Tolling**

   a.    **Mayo's Disability Does Not Toll the Statute of Limitations Under New York Law**

Mayo claims that he remained under the care of Dr. Jasser until 2009, during which time he was pursuing his administrative claim, and that his mental disorder prevented him from filing a claim during the statutory period. Resp. 5. Under C.P.L.R § 208, a disability only tolls the statute of limitations if a plaintiff's overall inability to function in society prevents him from protecting his rights. *McCarthy v. Volkswagen of America*, 55 N.Y.2d 543 (1982); *Giannicos v. Bellevue Hosp. Med. Cntr.*, 42 A.D. 3d 379 (1st Dep't 2007) (finding an incapacitated person's inability to function in society as a result of a stroke tolled the limitation period); *Ferreira v. Maimonides Med. Cntr.*, 43 A.D. 3d 856 (2d Dep't 2007) (holding the limitations period for a patient's medical malpractice action was tolled under the insanity provision where the patient was left unresponsive and in need of breathing and feeding). Mayo's medical records indicate that, despite his mental condition, he retained some functional capabilities during the statutory period. For example, in 2009, Dr. Jasser noted that Mayo was pursuing his masters degree in English education at Columbia University. Resp. 11, 18. In contrast, earlier in 2006, he noted that Mayo suffered from schizophrenia, paranoid personality disorder, bipolar disorder and other interpersonal psychosocial disorders, sleep apnea, diabetes, and obesity. *Id.* at 68. Dr. Jasser also noted that Mayo had trouble sustaining secure employment. *Id.* at 67. In 2006, Mayo joined a gym and a weight control program. *Id.* at 54. In 2002, Dr. Steven Cercy examined Mayo and determined that he was "otherwise independent in performing activities of daily living," which Mayo appeared to agree with at the time. *Id.* at 48-49 ("Initial cognitive

4

evaluation in 2002 showed mild, nonspecific problems; since that time [Mayo] has taken several computer classes in 2004, and 2 graduate-level Urban Affairs course between 2002 and 2004 through VA regional office . . . He is currently seeking vocational training in an academic track . . . [Mayo] denies problems in adaptive functioning."). Mayo did not appear to be in a state that prevented him from functioning in a meaningful way in society and there is no basis in the record to apply tolling under the C.P.L.R. § 208.

b.      <strong>The Statute of Limitations Under the FTCA Began to Accrue<br>at the Date of Discovery of the Government's Negligence</strong>

       In medical malpractice claims brought under the FTCA, a cause of action accrues "once an injured plaintiff has notice that the cause of his injury 'is in the government's control, not a concurrent but independent cause that would not lead anybody to suspect that the government had been responsible for the injury." *Valdez ex rel Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008) (quoting *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985)) The notice to the plaintiff "must be not of harm but of iatrogenic [doctor-caused] harm, though, [] not necessarily of negligent iatrogenic harm." *Drazan*, 762 F.2d. at 59 (held that plaintiff's cause of action for her husband's death accrued when it was later revealed that the doctor's negligence was the cause of death, not on the day the husband died).

       The Supreme Court held in *United States v. Kubrick*, 444 U.S. 111, 123-24 (1979), that the statute of limitations on a FTCA claim for medical malpractice based on wrongly prescribed medications begins accruing for a plaintiff when he "learn[ed] that the treatment with [the prescribed drug] was the cause of his injury." In *Kubrick*, the plaintiff had been advised by the Veterans Administration Hospital that his loss of hearing was caused by the drug he had been prescribed at the hospital. *Id.* at 123-24. Once the plaintiff became "aware of his injury and its

5

probable cause," the statute of limitations began and he had two years to file an administrative complaint. *Id.* at 118; *Valdez ex rel Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008). Plaintiffs are not penalized for "ignorance of the fact of his [or her] injury" because an "injury may not manifest itself for some time after the act that caused it and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff." *Valdez*, 518 F.3d at 177 (citing *Kubrick*, 444 U.S. at 122) (internal quotations omitted).

A cause of action does not accrue only when the plaintiff actually knows that the government is the cause of the injury. Instead, a court should apply the "diligence-discovery rule of accrual." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998). Thus, the statute of limitations begins to run "when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause—whichever comes first." *Valdez*, 518 F.3d at 178 (citing *Drazan*, 762 F.2d. at 59); *see also Kronisch*, 150 F.3d at 121 (held that a "claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim"). A plaintiff's suspicions of negligence may "give rise to a duty to inquire [into] the possible existence of a claim in the exercise of due diligence." *Id.*

While Mayo discontinued using Risperdal in 2002 because of a noticeable weight gain that he appears to have attributed to the drug, there is no evidence that he believed his subsequent medical conditions, including cardiac attacks, high blood pressure, liver problems and diabetes stemmed from his use until 2004, after he had conducted initial research into the matter. Resp. 6. He then filed his administrative complaint in 2006, seemingly believing he was preserving his rights by following the requisite administrative procedure prior to filing suit. Am. Compl. 51-52; Resp. 6-7. When his administrative complaint was denied in 2009 and he sought

6

appeal, Mayo then contacted Andrew Himmel, an attorney, to discuss a potential medical

malpractice claim.  Am. Compl. 42.  The current action was filed on April 19, 2011.

### c.   The Statute of Limitations is Subject to Equitable Tolling Under the FTCA

When a procedural bar exists based on a statute of limitations that is not jurisdictional, a

court may equitably toll the statute of limitations if "rare and exceptional circumstances"

prevented a petitioner from filing promptly.  *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.

2000) (per curiam).  To warrant such tolling, the plaintiff must establish that extraordinary

circumstances prevented him from timely filing his claim, and that he acted with "reasonable

diligence" during the period he seeks to toll.  *Id.*  Equitable tolling only applies if a plaintiff can

"demonstrate a causal relationship between the extraordinary circumstances and the lateness of

his filing, a demonstration that cannot be made if the plaintiff, acting with reasonable diligence,

could have filed on time notwithstanding."  *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir.

2000).

The Second Circuit has not yet addressed whether mental incapacity may equitably toll

the statute of limitations in FTCA cases.  Other Circuits remain split.  *Compare Santos ex. Rel.*

*Beato v. United States,* 559 F.3d 189 (3d Cir. 2009) (holding that equitable tolling is available),

*and T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 961 (8th Cir. 2006) (citing courts of

appeals holding that FTCA's limitations provision is jurisdictional but that equitable tolling

nevertheless applies because of Congressional intent), *with Chomic v. United States,* 377 F.3d

607 (6th Cir. 2004) (holding that the United States Government's sovereign immunity waiver

under the FTCA does not apply to disabilities because the statute does not provide a "savings

clause for disabilities of any kind"), *and Barnhart v. United States*, 884 F.2d 295 (7th Cir. 1989) (holding plaintiff's mental incapacity did not toll FTCA's limitation provision where the "disability at most erodes or impairs a plaintiff's desire to proceed with a recognized cause of action," but not foreclosing the possibility that a mental disability could in fact toll the statute where such disability prevented "a plaintiff from discovering or understanding the cause of an injury"). The Third Circuit has held that the FTCA statute of limitations period is not jurisdictional because "the Supreme Court subsequently held [after a case reversing the Third Circuit] that federal statutes of limitations are not jurisdictional and that 'the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.'" *Santos,* 559 F.3d at 194 (citing *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 93-96 (1990)).

Determining whether equitable tolling is warranted for a plaintiff's mental illness is a highly case-specific inquiry. *Bolarinwa*, 593 F.3d at 232 (quoting *Brown v. Parckchesler South Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002)). It is the plaintiff's burden to demonstrate the appropriateness of equitable tolling, and "in order to carry this burden, he must offer a 'particularized description of how the condition adversely affected his capacity to function generally or in relationship to her rights.'" *Id.* (quoting *Boos v. Runyon*, 201 F.3d 178, 184 (2d Cir. 2000)). A plaintiff's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling." *Boos,* 201 F.3d at 185.

The Government points out that circuits that have considered the effects mental capacity

may have on the timeliness of FTCA claims are limited to instances where "the very injury of which a plaintiff complains prevents him or her from being aware of that injury." Def. Reply 3; *Barnhart*, 884 F.2d at 298.  Mayo alleges that his medical condition placed him in a sedated state for over four years, disabling him from responding to his interests in a timely fashion.  Resp. 5. While he fails to discuss the details of his mental or physical state or provide specific facts connecting his condition to an inability to pursue his legal rights, Mayo provides numerous pages of his regular treatment sessions with Dr. Jasser.  Unlike the plaintiff in *Boos*, who "offer[ed] no more than a statement that she suffers from 'paranoia, panic attacks, and depression,'" Mayo has been clinically diagnosed with several mental disorders and has provided documentation to support his position.  *Boos*, 201 F.3d at 185.  Mayo, however, has not expanded upon the disabling effects of his conditions, and Dr. Jasser stated that to his knowledge, Mayo "always functioned independently and was able to go about his daily activities without any significant problems," despite struggling to maintain employment.  Supp. Decl. of Dr. Ira Jasser 2.

### B.      Failure to State a Claim

#### 1.      Motion to Dismiss Standard

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010).  In deciding a motion to dismiss under Rule 12(b)(6), the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the court must also apply a

9

"flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007); *see Elekira Entm't Grp., Inc. v. Santangelo*, No. 06 Civ. 11520 (SCR)(MDF), 2008 WL 4452393, at *2 (S.D.N.Y. Oct 1, 2008). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" to defeat a motion to dismiss. *Twombly*, 550 U.S. at 570; *see Johnson and Johnson v. Guidant Corp*, 2007 WL 2456625, at *4 (S.D.N.Y. Aug. 29, 2007)).

Where a plaintiff is pro se, the court should apply "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Moreover, in deciding a motion to dismiss involving a pro se plaintiff, the court can look beyond the "four corners of the complaint" to all the pleadings before the court, including the plaintiff's opposition papers. *Pagan v. New York State Div. of Parole*, No. 98 Civ. 5840 (FM), 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002); *Amaker v. Haponik*, No. 98 Civ. 2663, 2000 WL 343772, *1 (S.D.N.Y. Mar. 31, 2000); *see also Burgess v. Goord*, No. 98 Civ. 2077 (SAS), 1999 WL 33458, *1, n. 1 (S.D.N.Y. Jan. 26, 1999).

### 2.   Mayo Sufficiently Alleges a Medical Malpractice Claim Against Dr. Jasser

Mayo alleges that Dr. Jasser committed medical malpractice by failing to warn him about the side effects of Risperdal. The elements of proof in a medical malpractice action are "a deviation or departure from accepted standards of medical practice and evidence that such a departure was a proximate cause of the plaintiff's injury." *Eckman v. Cipolla*, 2009 WL 2163496, *4 (N.Y. Kings County, 2009) (citing *Keevan v. Rifkin*, 41 A.D.3d 661, 662 (2d Dep't

10

2007); *DiGaro v. Agrawal*, 41 A.D.3d 764, 767 (2d Dep't 2007); *Holbrook v. United Hospital*, 248 A.D.2d 358, 359 (2d Dept 1998)).

Medical records indicate that Mayo developed concerns about the effect Risperdal had on his weight gain and general health. Resp. 107. Mayo asserts that Dr. Jasser never informed him of the harmful side effects of Risperdal. *Id.* at 5. Dr. Jasser's own declaration does not state that he warned Mayo of the potential side effects, but only that Mayo stopped taking Risperdal on his own. Jasser Decl. 1-2. Indeed, the Government generally fails to address Mayo's malpractice claim. Moreover, Mayo attributes his sudden weight gain and diabetes to Risperdal. *Id.* at 3. Although support for a malpractice claim may be presently minimal, given the broad latitude granted a pro se litigant—and in this case one with a history of mental disorders—Mayo's allegation that Dr. Jasser failed to warn him of Risperdal's side effects, which allegedly caused his chronic weight gain and diabetes, is sufficient to give rise to a plausible complaint.

### 3.    Failure-to-Warn Claim Against Janssen Pharmaceuticals

Mayo claims that Jansen failed to provide proper warnings regarding the dangerous nature of Risperdal. "To succeed on a failure-to-warn claim, [Mayo] must prove that [Janssen] did not provide his physician[] with adequate warnings about risks that it knew or should have known; and the inadequacy of those warnings was the proximate cause of his injuries." *Alston v. Caraco Pharm. Inc.,* 670 F. Supp. 2d 279, 284 (S.D.N.Y. 2003). A company's duty to warn, however, is owed to the prescribing physician, not directly to the patient. *Id.* at 284 (referencing *Figueroa v. Boston Scientific Corp.*, 254 F. Supp. 2d 361, 369-70 (S.D.N.Y. 2003)). Additionally, a defendant provides sufficient warning for prescription medications when "information regarding 'the precise malady incurred' was communicated in the prescribing

11

information." *Alston*, 670 F. Supp. 2d at 284.

Mayo sets forth no information in his Complaint indicating that Janssen or Johnson and Johnson failed to adequately warn Dr. Jasser of the side effects of Risperdal. Instead, his basis for the failure to warn claim stems from Dr. Jasser's failure to warn him of the potential dangers. Accordingly, Mayo has not alleged sufficient facts to support a plausible failure-to-warn claim against Jansen Pharmaceuticals and this claim must fail.

### 4.     Mayo Fails to Adequately Allege That Risperdal had a Defective Design

"Under New York law, a design defect may be actionable under a strict products liability theory if the product is not reasonably safe." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 256-57 (1995). In determining reasonable safety, the courts look to (1) the substantial likelihood of harm; (2) the ability to design the product in a safer manner; and (3) substantial causation. *Id.* at 57.

Mayo has produced substantial evidence to support the first element of a design defect, including various medical authorities and articles, in addition to anecdotes of his own experience. Further, the government does not contest that the administration of Risperdal caused Mayo injuries, acknowledging that Mayo has satisfied the third element of substantial cause. It asserts, however, that Mayo has failed to plead that the Risperdal he received was significantly different from the Risperdal administered to others, or that the medication he received was somehow defective from what Risperdal is intended to be. He also does not allege that Risperdal can be designed in a safer manner. Mayo must make factual allegations that could plausibly lead to a court's inference of a design defect.

12

The Court interprets Mayo's arguments that Defendants falsely marketed the drug and understated the potential side effects as a products liability claim for design defect. *See* Resp. 4 ("[Johnson and Johnson] are part of this lawsuit because they made the drug that caused the effects and Jasser gave that drug to the patient. This is what I call 'the drug chain link.' That link both the federal government defendants and Johnson and Johnson to not providing or exposing the harmful side effects that a warning was issued in 2004."). As supporting documentation, Mayo attached articles warning the public about the potential side effects of Risperdal, including increased risk for diabetes, obesity and high cholesterol, Am. Opp'n to Mots. to Dismiss 2-3, as well as large-scale settlements Johnson and Johnson has had with various states over the resulting side effects of Risperdal.[1] However, such information alone is insufficient to support a design defect claim because it does not allege any facts relating to Defendants' ability to design a safer product, nor whether the Risperdal administered to him differed from what was administered to others. Because Mayo fails to articulate a cognizable claim, his claim for design defect must fail.

### 5.    The United States's Violation of Mayo's Right to Privacy

Mayo asserts a constitutional claim against the federal government, contending that it was involved in a conspiracy to violate his constitutional right to privacy by performing experiments on him without his knowledge. Although not specifically alleged, the Court treats Mayo's allegations as a *Bivens* claim under the Fifth Amendment and 42 U.S. § 1985. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). To

---

[1]Mayo attached an article highlighting Johnson and Johnson engaged in numerous settlements nationwide concerning the marketing and promotion of Risperdal and the downplaying of the potential side effects. Such settlements include a $327 million settlement in South Carolina, a $257.7 million settlement in Louisiana, and a $4 million judgment against Johnson and Johnson in West Virginia. Resp. 527-32.

support a § 1985 conspiracy allegation, Mayo must demonstrate that an agreement existed between the defendants to infringe upon one of Mayo's constitutional rights. *Whitfield v. Forest Elec. Corp.,* 772 F. Supp. 1350,1353 (S.D.N.Y. 1991). His assertion must consist of more than conclusory allegations. *See Hyman v. Holder*, No. 96 Civ. 7748 (RCC), 2001 WL 262665, at *5 (S.D.N.Y. Mar. 15, 2001). In addition, *Bivens* claims have a three-year statute of limitations in New York, accruing from the date of injury. *Owens v. Okure*, 488 U.S. 235, 251 (1989); *Marbi Corp. of New York v. Puhekker*, 9 F. Supp. 2d 425, 427 (S.D.N.Y. 1998).

In supporting his argument, Mayo points to his doctor's experience as a chemist and advertisements in the Veteran Hospital requesting that veterans diagnosed with schizophrenia and bipolar disorder participate in a four hour study. In addition, he cites to previous incidents of government experimentation in the United States. Am. Compl. 44. Defendants fail to address the merits of Mayo's claim or acknowledge that he has raised a constitutional question. Instead, they point out that, regardless of the potential merits of such an argument—which they dispute—the statute of limitations on any cognizable claim has long since passed. Presuming the claim is based on medication prescribed by Dr. Jasser from 2000 to 2001, they state that such claim is time barred by the three-year statute of limitations. Mot. to Dismiss 5. These concerns have already been addressed above, and the Court finds the claim is timely.

Mayo fails, however, to make any factual assertions to support his claim that the federal government engaged in medical experimentation with him and other veterans for the purposes of testing the viability of Risperdal. Aside from attaching documents suggesting a previous government drug experiment in Tuskegee where African Americans who contracted syphilis were given experimental treatments that in many instances caused their death, Resp. 356, Mayo

14

offers no evidence that suggests he has been part of an experiment or that he has knowledge of any other veterans who were given the same treatments and medications as him.

### 6.    Retention of State Law Malpractice Claim

As noted above, Mayo's only remaining cause of action is his medical malpractice claim against Dr. Jasser.  Federal courts may exercise supplemental jurisdiction when the state and federal claims are part of "a common nucleus of operative fact."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Federal courts also are permitted to retain pendent jurisdiction of remaining state claims if the federal claims are dismissed on the merits and prior to trial.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  When retaining jurisdiction over a state claim, a court must consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction."  *Id.*  Federal courts normally decline to exercise jurisdiction when all the federal claims have been dismissed before trial.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Mayo does not show any reason for this Court to depart from the usual rule.  Since all of Mayo's federal claims have been dismissed, his remaining state law claim against Dr. Jasser should be dismissed without prejudice to his refiling in state court.

## IV.   CONCLUSION

Based on the foregoing, Defendants Janssen and United States Government's motions are **GRANTED**.  Defendant Jasser's motion is **GRANTED** with respect to the constitutional claim. Although Jasser's motion is **DENIED** with respect to the malpractice claim, the claim should be **DISMISSED** without prejudice because no federal claims remain.

**SO ORDERED this 28th day of September 2012**
**New York, New York**

_Ronald L. Ellis_
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**